## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JOHN ROGNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 24-cv-00307-SH |
| | ) | |
| CITY OF CATOOSA, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff brought this lawsuit on June 28, 2024, asserting a Fifth Amendment takings claim and seeking a declaration that Defendant improperly exercised jurisdiction over his land.[1]  Defendant now moves to dismiss the takings claim, arguing it is barred by issue preclusion and the applicable statute of limitations.  Defendant also moves to dismiss the declaratory judgment action for lack of subject-matter jurisdiction and standing.

The Court agrees Plaintiff is precluded from asserting a taking occurred and, in any event, brought his claim too late.  As for the declaratory judgment action, the Court finds that it has jurisdiction, but Plaintiff cannot seek a retrospective declaratory judgment.  Plaintiff's claims will be dismissed.

### Background

The Court treats the factual allegations in the Complaint as true for purposes of this order.  The Court has also considered documents attached to the parties' briefing and

---

[1] The parties have consented to the jurisdiction of a U.S. Magistrate Judge for all purposes under 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(a).  (ECF No. 15.)

has taken judicial notice of filings in the related state-court action. (*See* section I(A), *infra*.) The following background is based on these allegations and documents:[2]

Plaintiff John Rogne ("Rogne") owns property in Catoosa, Oklahoma. (ECF No. 2 ¶¶ 1–3.) This property is located within the exterior boundaries of the Cherokee Nation, and Rogne is a Cherokee Nation citizen. (*Id.* ¶ 30.) In 2009, the City of Catoosa (the "City") issued a cease-and-desist order to Rogne on the grounds that he did not have a permit to stockpile dirt on his property. (*Id.* ¶ 6.) After conducting a hearing, the City rescinded the order. (*Id.* ¶ 7.)

Two years later, in 2011, the City issued another cease-and-desist order regarding the same lots. (*Id.* ¶ 8.) On October 3, 2014, Rogne filed a state-court lawsuit against the City, asserting—among other things—an action for inverse condemnation and seeking damages.[3] (*Id.* ¶ 10.[4])

In October 2016, the City filed a motion for summary judgment, arguing, *inter alia*, that Rogne had failed to exhaust his administrative remedies with respect to the 2011

---

[2] The Court references state-court filings for purposes of elucidating the claims and rulings made in the state-court action and its procedural posture. The Court does not treat the factual statements in those filings as true for purposes of this order. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) ("[t]he documents may only be considered to show their contents, not to prove the truth of matters asserted therein" (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002))).

[3] "Inverse condemnation is 'a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant.'" *Knick v. Twp. of Scott*, 588 U.S. 180, 186 (2019) (quoting *United States v. Clarke*, 445 U.S. 253, 257 (1980)).

[4] *See also Rogne v. City of Catoosa*, No. CJ-2014-420 (Rogers Cty. Dist. Ct., Okla.) (the "Rogers Cty. Case"), Pet. ¶ 12 (Oct. 3, 2014); *id.* Am. Pet. ¶ 11 (Oct. 29, 2014). The docket for the Rogers County Case is available at https://www.oscn.net/dockets/GetCaseInformation.aspx?db=rogers&number=CJ-2014-420 (last visited Feb. 21, 2025).

cease-and-desist order.[5]  Plaintiff then moved to stay the state-court action pending the City's administrative hearing on the order.[6]  The City vacated the 2011 cease-and-desist order (ECF No. 2 ¶ 12), apparently in 2017.[7]

The parties then had a dispute regarding the terms of a settlement,[8] and the district court entered judgment partially granting each parties' motion.[9]  The City appealed that judgment;[10] the Court of Civil Appeals reversed;[11] and the district court received the mandate on November 5, 2019.[12]

While that appeal was pending, on June 21, 2019, the United States Supreme Court decided the case of *Knick v. Township of Scott*, 588 U.S. 180 (2019).  Prior to *Knick*, a person like Rogne had to wait until a state court denied his claim for just compensation under state law before he could file a federal takings claim under 42 U.S.C. § 1983.  *See id.* at 184 (citing *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985), *overruled by Knick*).  However, if a plaintiff followed the requirements of *Williamson County* and filed a state suit first, the "state court's resolution of a claim for just compensation under state law generally has preclusive effect in any subsequent

---

[5] *See id.*, Def.'s Mot. Summ. J., at 2 (Oct. 6, 2016).

[6] *See id.*, Pl.'s Mot. Stay (Oct. 28, 2016).

[7] Plaintiff's complaint does not state the date of this vacatur.  However, Rogne agrees in his briefing that it occurred in 2017.  (*See, e.g.*, ECF No 17 at 7 ("the City cannot deny that it vacated the 2011 Cease and Desist Order after giving Mr. Rogne his administrative hearing in 2017").)

[8] *See, e.g.*, *Rogers Cty. Case*, Pl.'s Mot. Enforce Sett. Agmt. (Sept. 21, 2017); *id.*, Comb. Resp. Mot. Enforce Sett. Agmt. (Oct. 10, 2017).

[9] *See id.* Journal Entry of J. (Jan. 19, 2018).

[10] *See id.* Pet. in Error (Feb. 16, 2018).

[11] *See Rogne v. City of Catoosa*, No. 116,769, slip. op. (Okla. Ct. Civ. App. Feb. 14, 2019).

[12] *See Rogers Cty. Case*, Mandate (Nov. 5, 2019).

federal suit." *Id.* (citing *San Remo Hotel, L.P. v. City & Cnty. of San Francisco*, 545 U.S. 323 (2005)). "The takings plaintiff thus finds himself in a Catch-22: He cannot go to federal court without going to state court first; but if he goes to state court and loses, his claim will be barred in federal court." *Id.* at 184–85. *Knick* eliminated this Catch-22. It overruled *Williamson County* and found that a property owner could bring his takings claim under § 1983 immediately upon the taking of his property without just compensation. *Id.* at 206. After *Knick* was handed down, Rogne did not file a § 1983 case in this court.

Back in the state district court, Rogne's litigation continued. In May 2020, the City filed a motion to dismiss, asserting there was no justiciable controversy and that Rogne's claims were moot following the City's rescission of the 2011 cease-and-desist order.[13] In response, Rogne argued he still was entitled to compensation for the temporary taking that occurred during the period when the cease-and-desist order was in effect.[14] The state district court granted the City's motion to dismiss.[15] Plaintiff moved to reconsider and to supplement the record with additional evidence.[16]

The state court held a hearing on October 13, 2021, and issued a "minute" granting Rogne's motion for "new trial,"[17] converting the City's motion to dismiss into one for summary judgment, and granting both that motion and the earlier 2016 motion for

---

[13] *See Rogers Cty. Case*, Def. Mot. Dismiss (May 18, 2020).

[14] *See id.*, Pl.'s Resp. Mot. Dismiss (Jun. 5, 2020).

[15] *See id.*, Order Granting City's Mot. Dismiss (July 27, 2020).

[16] *See id.*, Pl's Mot. Rehearing (Aug. 10, 2020); Pl.'s Am. Mot. Rehearing (Aug. 13, 2020); App. Supp. Record & File Reply (Apr. 15, 2021).

[17] The "Court considers the Plaintiff's Motion for Rehearing filed on August 10, 2020, to be a motion for a new trial." *Id.*, Order and Judgment (July 18, 2022).

summary judgment.[18]  On July 18, 2022, the state court entered an Order and Judgment formalizing this ruling.[19]  Rogne filed a motion for new trial, which the state court denied.[20]  Rogne then appealed.[21]

On appeal, the Oklahoma Court of Civil Appeals reviewed the grant of summary judgment *de novo*.  *Rogne v. City of Catoosa*, No. 121,026, slip. op. ¶ 6 (Okla. Civ. App. June 29, 2023).  Reviewing Plaintiff's arguments, the appellate court summarized:

> Rogne contends, in essence, that it was error for the trial court to grant summary judgment to the City because, according to him, he had a viable claim for damages for inverse condemnation from the time that the 2011 Cease and Desist Order had been issued by the City until 2017, when the City rescinded the Order.  We disagree with Rogne's contentions and affirm the Orders of the trial court.

*Id.* ¶ 7.  In affirming summary judgment, the court concluded, "Rogne cannot maintain an inverse condemnation claim under any set of facts because he failed to exhaust his administrative remedies prior to filing the instant action."  *Id.* ¶ 9.  The court further acknowledged "Rogne's argument that an administrative remedy is ineffective because there is no administrative remedy for compensating a landowner for money damages for a temporary taking."  *Id.* n.1.  The appellate court found, "however, that, as a matter of law, there was no taking because Mr. Rogne was granted relief as soon as he sought an administrative remedy and the City rescinded the Cease and Desist Order."  *Id.*

---

[18] *See id.*, Minute (Oct. 13, 2021).

[19] *See id.*, Order and Judgment (July 18, 2022).

[20] *See id.*, Mot. New Trial (Aug. 8, 2022); *id.*, Order (Dec. 28, 2022).

[21] *Rogne v. City of Catoosa*, No. 121,026 (Okla. Civ. App.) (the "State Appeal"), Pet. in Error (Jan. 30, 2023).  The docket for the State Appeal is available at https://www.oscn.net/dockets/GetCaseInformation.aspx?db=appellate&number=121026 (last visited Feb. 21, 2025).

Rogne then filed a petition for writ of certiorari from the Oklahoma Supreme Court, which the court denied on February 12, 2024.[22]  Mandate issued on March 7, 2024.[23]  The United States Supreme Court's docket indicates that no petition for writ of certiorari was filed there, so this mandate marks the end of Rogne's state-court litigation.

On June 28, 2024, Rogne filed the current federal lawsuit.  (ECF No. 2.)  Rogne brings suit under 42 U.S.C. § 1983 for a taking without just compensation in violation of the Fifth and Fourteenth Amendments.  (*Id.* ¶¶ 23–28.)  As in state court, Rogne continues to assert that he suffered a temporary taking of his property from the time the 2011 cease-and-desist order was entered until it was later vacated.  (*Id.* ¶¶ 24, 26.)

Separately, Rogne seeks a declaratory judgment that "the City and the Oklahoma State Courts including Rogers County District Court and the Court of Appeals lacked jurisdiction to regulate and penalize Plaintiff" because he is an Indian living within a reservation.  (*Id.* ¶¶ 29–35.)

The City now moves to dismiss.  (ECF No. 9.)  The City argues Rogne fails to state a claim under § 1983, as it is barred by issue preclusion and the statute of limitations.  (*Id.* at 4–6.)  The City further argues this Court lacks jurisdiction over Rogne's declaratory judgment action under the *Rooker-Feldman* doctrine and because the relief sought is entirely retrospective.  (*Id.* at 6–9.)

---

[22] *See State Appeal*, Pet. Writ Cert. (July 19, 2023); *id.*, Docket (Feb. 12, 2024).

[23] *See id.*, Mandate (Mar. 7, 2024).

## Analysis

### I.  Rogne's § 1983 Claims

Having reviewed the parties' briefing, the Court finds Rogne has fallen into the type of "preclusion trap" the Supreme Court sought to eliminate in *Knick*.  Because he pursued his inverse condemnation claim to its conclusion in state court, he is precluded from re-arguing issues decided there, including whether a taking occurred.  Even were Rogne's claims not precluded, he has brought his § 1983 action years too late.

### A.  Standard of Review—Rule 12(b)(6)

The City moves to dismiss Rogne's § 1983 action for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  "[A] plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'"  *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104 (10th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  All such reasonable inferences are resolved in the plaintiff's favor.  *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555–56 (citations and footnote omitted).

A statute of limitations argument, however, is an affirmative defense that must be raised by the defendant and which is often dependent on a resolution of factual disputes that cannot occur at the Rule 12 stage.  *Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022).  Even so, "[i]f from the complaint, 'the dates on which the pertinent acts

occurred are not in dispute, [then] the date a statute of limitations accrues is . . . a question of law' suitable for resolution at the motion to dismiss stage." *Id.* (quoting *Edwards v. Int'l Union, United Plant Guard Workers of Am.*, 46 F.3d 1047, 1050 (10th Cir. 1995)); *see also Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016) ("A statute of limitations defense may be appropriately resolved on a Rule 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished." (cleaned up)).

When assessing the allegations in a complaint, the Court looks not only to the complaint itself, but to "documents attached to or referenced in the complaint if they 'are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Brokers' Choice*, 861 F.3d at 1103 (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)). Here, the Court considers the state-court documents referenced in and/or attached to the parties' briefing, as they are referred to in Rogne's complaint (ECF No. 2 ¶¶ 10, 14–15); are central to his claims (*id.* ¶¶ 22–35); and no party disputes their authenticity. The Court also considers other filings from the parties' state-court action, which are a matter of public record. *See Tal*, 453 F.3d at 1264 n.24 ("facts subject to judicial notice may be considered in a Rule 12(b)(6) motion," including matters of public record); *Rose v. Utah State Bar*, 471 F. App'x 818, 820 (10th Cir. 2012) (unpublished) (noting this includes state-court filings).[24]

## B.   Rogne Is Precluded from Asserting a Taking Occurred

As Rogne correctly notes, in 1985, the Supreme Court held that takings claims were not ripe until a state "fails to provide adequate compensation for the taking." *Williamson*

---

[24] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

*Cty.*, 473 U.S. at 195.  In 2005, the Supreme Court recognized that this could lead to what would later be called the "*San Remo* preclusion trap."  *Knick*, 588 U.S. at 185.

In *San Remo*, the plaintiffs filed their original federal takings action in 1993, but it was determined, on summary judgment, to be unripe under *Williamson County* because the plaintiffs had not pursued an inverse condemnation action in state court.  *San Remo*, 545 U.S. at 330–31.  After complying with the federal court's holding and concluding their state-court litigation, the plaintiffs returned to federal court.  *Id*. at 334 & n.12.  This time, the federal-court action was dismissed due to issue preclusion.[25]  *Id*. at 334–35.

On certiorari, the Supreme Court recognized that the plaintiffs would have pre-ferred not to pursue their as-applied takings claim in state court and were forced to do so by the *Williamson County* ripeness rule.  *Id*. at 343–44.  The Supreme Court noted, "[i]t is hardly a radical notion to recognize that, as a practical matter, a significant number of plaintiffs will necessarily litigate their federal takings claims in state courts."  *Id*. at 346. Indeed, the Supreme Court observed that most of its takings jurisprudence originated in state-court cases brought by petition for writ of certiorari.  *Id*. at 347 & n.26 (collecting cases).  The Supreme Court, therefore, agreed that the federal court had properly applied issue preclusion in the takings case.  *Id*. at 347–48.

As in *San Remo*, Rogne here argued in state court that a taking—as that term is defined under federal Fifth Amendment jurisprudence—had occurred.  *See e.g.*, *Rogers Cty. Case*, Pl.'s Resp. Mot Dismiss, at 10–11 (June 5, 2020); *State Appeal*, Pet. in Error,

---

[25] Although the state-court case had been decided entirely in reference to state takings law, the court had "interpreted the relevant substantive state takings law coextensively with federal law."  *Id*. at 335.  The Supreme Court assumed, for purposes of its decision, that "the California Supreme Court was correct in its determination that California tak-ings law is coextensive with federal law . . . ."  *Id*. at 337 n.18.

at 14 ¶ 4 (Jan. 30, 2023).[26]  Further, it appears there is "no difference between the protections afforded Oklahoma citizens under either" the Fifth Amendment or Oklahoma's takings clause, at least as it relates to Okla. Const. art. 2, § 24. *Brannon v. City of Tulsa*, 1996 OK CIV APP 145, ¶ 5, 932 P.2d 44, 46; *ConocoPhillips Co. v. Henry*, 520 F. Supp. 2d 1282, 1317 n.44 (N.D. Okla. 2007) (citing Okla. Const. art. 2, § 24, and noting that "the federal framework and the Oklahoma [takings] framework are coextensive"), *rev'd on other grounds*, 555 F.3d 1199 (10th Cir. 2009).[27]  In making its decision in Rogne's case—which, the court acknowledged included arguments about "federal and state court precedent"—the Oklahoma Court of Civil Appeals relied on state case law that, in turn, relied on federal law in determining whether a taking occurred.[28] *See, e.g.*, *Rogne v. City of Catoosa*, No. 121,026, slip op. ¶¶ 7–8 (Okla. Ct. Civ. App. June 29, 2023) (citing *April*, ¶ 14).  Against this backdrop, the Court of Civil Appeals rejected Rogne's argument that he had a viable claim for damages during the period in 2011–2017 when he was under the cease-and-desist order, and further explicitly found that "as a

---

[26] Raising issue "[w]hether the District Court erred where the administrative remedy was not effective because under United States Supreme Court and Oklahoma Supreme Court precedent there is no administrative remedy for compensating a landowner for money damages for a governmental taking even if it is a temporary taking." *Id.*

[27] *Cf. April v. City of Broken Arrow*, 1989 OK 70, ¶ 1 n.1, 775 P.2d 1347, 1348, n.1 (noting Article 2, Section 24 is in "harmony" with the Fifth Amendment and "goes further in the protection of private property" by providing additional compensation for damaged property); *but cf. Bd. of Cnty. Comm'rs v. Lowery*, 2006 OK 31, ¶¶ 19–20, 136 P.3d 639, 651–52 (in consideration of the Oklahoma Constitution's "general rule against the taking of private property for private use," the constitutional provisions "provide private property protection to Oklahoma citizens beyond that which is afforded them by the Fifth Amendment" and place "more stringent limitation on governmental eminent domain power" (citing Okla. Const. art 2, § 23) (emphasis added)).

[28] In his briefing, Rogne makes various arguments relating to the decision of the Rogers County District Court.  (*See, e.g.*, ECF No. 17 at 18.)  As the Court of Civil Appeals conducted a *de novo* review, the undersigned finds it is the appellate decision that determines what was or was not ultimately decided in the state-court case.

matter of law, there was no taking . . . ." *Id.* ¶ 7 & n.1. Whatever this Court's thoughts on the correctness of the state appellate court's reasoning, that court explicitly ruled on the very issue Rogne raises in this case—whether there was a taking without just compensation.

The Court then must turn to whether Oklahoma courts would give preclusive effect to the state appellate court's ruling. *See Ryan v. City of Shawnee*, 13 F.3d 345, 347 (10th Cir. 1993) ("Under the full faith and credit statute, federal courts must give the judicial proceedings of any state court the same preclusive effect that those judgments would be given by the courts of that state." (citing 28 U.S.C. § 1738)). Under Oklahoma's "doctrine of issue preclusion, once a court has decided an issue of fact or of law necessary to its judgment, the same parties or their privies may not relitigate that issue in a suit brought upon a different claim." *Salazar v. City of Okla. City*, 1999 OK 20, ¶ 10, 976 P.2d 1056, 1060 (footnotes omitted). The precluded party must have "had a 'full and fair opportunity' to litigate the issue that was adversely resolved," and the party asserting the defense has the burden of establishing that (1) the issue to be precluded was actually litigated and determined (2) in a prior action between the same parties or their privies, and (3) its resolution was essential to a decision in that prior action. *Id.* at 1060–61. A party may not have had a "full and fair opportunity" to litigate if (1) it was not sufficiently foreseeable in the first action that the issue would arise in a later action or (2) the precluded party did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action. *Id.* at 1060 n.7.

Here, Rogne had a full and fair opportunity to litigate the issue of whether a taking occurred from 2011 to 2017. It was entirely foreseeable that the issue would arise in a later action; Rogne has explicitly stated that he was pursuing the inverse condemnation

action in order to ripen a subsequent Fifth Amendment takings claim.  Further, Rogne had an adequate opportunity and incentive to obtain a full and fair adjudication of the state-court action.  The dispute Rogne has with what happened at the state-court level is not that there was no opportunity to raise his arguments; it is that the state court rejected those arguments.

The Court further finds that the issue of whether there was a taking was actually litigated and determined; that it is undisputed the parties are the same in this action and the prior state-court litigation; and that the existence of a taking was essential to a decision in the prior case.  On this final issue, the Court of Civil Appeals found "Rogne cannot maintain an inverse condemnation claim under any set of facts because he failed to exhaust his administrative remedies" before filing the state-court action.  *Rogne v. City of Catoosa*, No. 121,026, slip op., ¶ 9 (Okla. Ct. Civ. App. June 29, 2023).  Perhaps the court could have stopped there and ended the case.  But the court apparently felt it could not, noting Rogne had made the argument that the administrative remedy was ineffective due to the lack of any remedy for temporary takings.  As such, the court expressly found there "was no taking."  *Id.* n.1.  In these circumstances, the state appellate court's finding that no taking occurred was an essential part of its decision.[29]

Finally, Rogne argues an exception to preclusion based on an intervening change in the applicable legal context, namely the Supreme Court's decision in *Knick*.  (ECF No.

---

[29] Rogne argues there can be no issue preclusion without a final judgment on the merits. (ECF No. 17 at 15 (citing *Bronson Trailers & Trucks v. Newman*, 2006 OK 46, ¶ 4 n.9, 139 P.3d 885, 888 n.9).)  Rogne asserts the state-court judgment was not on the merits, because he received no compensation, because the state-court's ruling that there was no taking would in essence allow the government's actions to "nullify" his right to compensation, because the state district court ruled his claims were moot, and because there was no jury trial.  (*Id.* at 15–19.)  As discussed in relation to Oklahoma's savings statute, *infra* at section I(C)(4), these arguments fail.

17 at 19–20 (citing *Herrera v. Wyoming*, 587 U.S. 329, 343 (2019).) It is not at all clear, however, that *Knick*'s change in <u>when</u> a plaintiff may bring their takings claim has any effect on the legal context of <u>whether</u> a taking has occurred. The Court need not decide the issue. For "the issue preclusion change-in-law exception to apply, the relevant change in law must occur between the preclusive judgment and any subsequent action." *Boulter v. Noble Energy Inc.*, 74 F.4th 1285, 1290 (10th Cir. 2023). Here, the Supreme Court issued *Knick* in 2019, while Rogne was still litigating his claims in state court—not after his state court case was resolved. The exception does not apply.[30]

### C.    Any § 1983 Claims Would Be Barred by the Statute of Limitations

Even if Rogne were not precluded from bringing his § 1983 claim, it would still be barred by the statute of limitations. Rogne could first bring a § 1983 claim in 2019, when *Knick* was decided. His claim, therefore, accrued in 2019. Because Rogne did not bring his claim until 2024—roughly five years after accrual—it is barred by the applicable statute of limitations. The Court rejects Rogne's arguments that the limitations period was "tolled" or that Oklahoma's savings statute applies.

### 1.    Limitations for § 1983 Actions—Generally

"Because Congress has not enacted a statute of limitations expressly applicable to section 1983 claims, the courts must adopt the most analogous limitations period provided by state law." *Abbitt v. Franklin*, 731 F.2d 661, 663 (10th Cir. 1984) (en banc). The

---

[30] In relation to his declaratory judgment action, Rogne argues that the City's preclusion defense fails because there is no former "valid" judgment, because the cease-and-desist order was "an invalid exercise of regulatory authority against a Cherokee person and their property." (ECF No. 17 at 21.) As discussed *infra* at note 33, Rogne neither explains nor supports any legal theory as to why this also means Oklahoma's district courts would lack jurisdiction to hear the claims he himself brought against the City.

Tenth Circuit has concluded "that all section 1983 claims should be characterized as actions for injury to personal rights," making "the most analogous Oklahoma statute . . . the two-year limitations period" in Okla. Stat. tit. 12, § 95(A)(3).  *Id.*  As with all statutes of limitations, the running of the limitations period "in a § 1983 action begins when the cause of action accrues . . . ."  *Bedford v. Rivers*, 176 F.3d 488 (table), 1999 WL 288373, at *1 (10th Cir. May 10, 1999) (unpublished).  "While state law governs limitations and tolling issues, federal law determines the accrual of section 1983 claims."  *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995).

"A right of action 'accrues' when the plaintiff has a 'complete and present cause of action'—*i.e.*, when she has the right to 'file suit and obtain relief.'"  *Corner Post, Inc. v. Bd. of Governors*, 603 U.S. 799, 809–11 (2024) (quoting *Green v. Brennan*, 578 U.S. 547, 554 (2016)).  Put another way, "a civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action, or when the plaintiff's right to resort to federal court was perfected."  *Herrera v. City of Espanola*, 32 F.4th 980, 990 (10th Cir. 2022) (citations and internal quotation marks omitted).

### 2.   Accrual of Rogne's Federal Constitutional Claims

As the Supreme Court notes, "a statute of limitations begins to run at the time the plaintiff has the right to apply to the court for relief."  *Corner Post*, 603 U.S. at 811 (internal quotations omitted).  "Conversely, [the Supreme Court has] rejected the possibility that a limitations period commences at a time when the plaintiff could not yet file suit as inconsistent with basic limitations principles."  *Id.* (cleaned up).  Applying these two concepts, the Court finds that Rogne's § 1983 claim accrued, as a matter of law, in 2019.

Before 2019, Rogne was bound by *Williamson County*'s holding that his cause of action was not ripe until the state court had denied his claim for compensation.  473 U.S.

at 195.  Rogne could not file his § 1983 suit before then, and it would be inconsistent with basic limitations principles to find that his claim had accrued.

However, after *Knick* overruled *Williamson County*, Rogne was no longer constrained.  He believed his property had been taken without just compensation by a local government—this was all *Knick* required for a property owner to bring a § 1983 takings claim.  *See* 588 U.S. at 206.  And Rogne knew of his injury—indeed he was already seeking damages for it.  At that point in 2019, Rogne had the right to apply to the court for relief on his federal claim.

The posture and pendency of Rogne's state-court action did not limit this right.  In the state-court case, the mandate from the earlier settlement appeal had issued by 2019 and Rogne was back in the district court litigating the merits.  He could have sought to amend his claims to include the § 1983 claim.  *See Harper v. Va. Dep't of Tax'n*, 509 U.S. 86, 97 (1993) (generally, Supreme Court decisions are given "full retroactive effect" in open cases);[31] *see also Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) ("Minimal respect for the state processes . . . precludes any *presumption* that the state courts will not safeguard federal constitutional rights.").  Rogne also was free to bring his § 1983 claim in federal court, despite the pendency of the state-court litigation.  *See Wyles v. Sussman*, 661 F. App'x 548, 551 (10th Cir. 2016) ("the general rule is that a pending state-court action 'is no bar to proceedings concerning the same matter in the Federal court having jurisdiction'" (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571

---

[31] "When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule."  *Id.*

U.S. 69, 73 (2013)).  As such, Rogne could have brought his federal claim after *Knick* was decided.

The Court, therefore, finds Rogne's federal constitutional claim accrued when *Knick* was issued on June 21, 2019.  *Cf. 4th Leaf, LLC v. City of Grayson*, 425 F. Supp. 3d 810, 821 (E.D. Ky. 2019) (deciding, on the basis of tolling, that the limitations period for takings claim did not begin to run "until June 21, 2019 when the Supreme Court overruled *Williamson County*").

### 3.    The Limitations Period Was Not Equitably Tolled

Rogne argues he properly filed his state-court action in reliance on *Williamson County*, and, because the law changed mid-case, the statute of limitations for his federal § 1983 claim was tolled until completion of that action.  (ECF No. 17 at 14.)  He offers no law in support of this argument.

The Court looks to state law to determine tolling.  *See Fratus*, 49 F.3d at 675. Generally, Oklahoma permits tolling of a statute of limitations in two circumstances. *Alexander v. Oklahoma*, 382 F.3d 1206, 1217 (10th Cir. 2004).  First, tolling may be proper when "the existence of a 'legal disability' provides proper grounds for equitable tolling." *Id.* (citing Okla. Stat. tit. 12, § 96).  "Oklahoma courts have applied this provision only for plaintiffs whose competency is impaired or who have not reached the age of majority." *Id.*  Second, Oklahoma may toll the limitations period "until an injured party knows of, or *in the exercise of reasonable diligence*, should have known of or discovered the injury, and resulting cause of action." *Id.* (internal quotations omitted).  Thus, the cause of action is tolled when the defendant engages in fraudulent conduct that lulls the plaintiff into sitting on his rights. *Id.*  Neither circumstance applies in this case.  Rogne provides no other impediment to him bringing a § 1983 claim after 2019.

### 4.    Rogne's Claims Are Not Saved by Okla. Stat. tit. 12, § 100

Rogne separately argues that his § 1983 claim is tolled by Oklahoma's savings statute, Okla. Stat. tit. 12, § 100.  (ECF No. 17 at 8–14.)  Pursuant to section 100,

> If any action is commenced within due time, and a judgment thereon for the plaintiff is reversed, or if the plaintiff fail in such action otherwise than upon the merits, the plaintiff . . . may commence a new action within one (1) year after the reversal or failure although the time limit for commencing the action shall have expired before the new action is filed.

Okla. Stat. tit. 12, § 100.  For the savings statute to apply, a plaintiff must demonstrate "(1) that the original action was timely, (2) that the action terminated for some reason other than its merits, (3) that [the plaintiff] qualifies as one of the parties entitled to revive the action, and (4) that the new action is substantially the same as the original."  *State Farm Mut. Auto. Ins. Co. v. Payne*, 2017 OK 95, ¶ 5, 408 P.3d 204, 206.  The "one year period commences on the day after the appeal is final."  *Cole v. Josey*, 2019 OK 39, ¶ 4, 457 P.3d 1007, 1009.

For any subsequently filed case, "Oklahoma courts apply the 'transactional approach' to determine whether various theories of recovery fall within the Oklahoma Savings Statute."  *Thompson v. Clymer*, No. 21-CV-156-GKF-SH, 2021 WL 6138077, at *3 (N.D. Okla. Nov. 23, 2021) (citing *Chandler v. Denton*, 1987 OK 38, ¶ 12, 741 P.2d 855, 862–63)).  Under this test, "[t]he operative event that underlies a party's claim delineates the parameters of his cause of action."  *Chandler*, ¶ 12, at 863.  Meanwhile, in deciding whether a claim failed otherwise than upon the merits, "[t]he term 'merits' means 'the real or substantial grounds of action or defense as distinguished from matters of practice, procedure or form.'"  *Hug v. James*, 2008 OK CIV APP 93, ¶ 12, 197 P.3d 22, 24–25 (quoting *Flick v. Crouch*, 1967 OK 131, ¶ 15, 434 P.2d 256, 261).

Both parties' arguments focus on whether the state matter was resolved upon the merits.[32]  The Court rejects Rogne's various arguments that it was not.

### a.   No Compensation

Citing Justice Thomas's concurrence in *Knick*, Rogne argues that "a taking without just compensation has not been decided on its merits until there has been the actual payment of 'compensation' – compensation is the remedy."  (ECF No. 17 at 9; *see also id.* at 12–14.)  Because the state court awarded no compensation, he argues, its decision could not be on the merits.  (*Id.* at 9.)

As a preliminary matter, Rogne misreads Thomas's concurrence.  The quoted section reads in full,

> This "sue me" approach to the Takings Clause is untenable.  The Fifth Amendment does not merely provide a damages remedy to a property owner willing to "shoulder the burden of securing compensation" after the government takes property without paying for it.  Instead, it makes just compensation a "prerequisite" to the government's authority to "tak[e] property for public use."  A "purported exercise of the eminent-domain power" is therefore "invalid" unless the government "pays just compensation before or at the time of its taking."  If this requirement makes some regulatory programs "unworkable in practice," so be it—our role is to enforce the Takings Clause as written.

*Knick*, 588 U.S. at 206–07 (Thomas, J., concurring) (citations omitted).  Nothing in Thomas's concurrence even hints that a takings-related lawsuit can never be decided on the merits unless and until the plaintiff wins.

### b.   No Jury

Rogne next argues that Oklahoma law requires inverse condemnation actions— including the issue of whether there was a taking—be tried to a jury.  (ECF No. 17 at 9–

---

[32] The Court, therefore, assumes without deciding that this new § 1983 action is substantially the same as the original inverse condemnation action under the savings statute.

10.)  Because no jury was empaneled, he argues, there was no decision on the merits.  (*Id.* at 10.)

The statement "that the taking issue must be determined by a jury" is "merely shorthand for the requirement that the taking issue is to be submitted to the trier of fact." *Williams v. State ex rel. Dep't of Transp.*, 2000 OK CIV APP 19, ¶ 35, 998 P.2d 1245, 1252.  "Stated otherwise, whether a jury is empaneled to determine damages or not, a determination must be made on a taking." *Id.* ¶ 36, at 1252.  While various cases state that "the determination of a taking . . . is not susceptible to summary disposition," *id.*, the authorities cited merely refer to the need for a jury to resolve disputes that require a factual determination, *see Oxley v. City of Tulsa ex rel. Tulsa Airport Auth.*, 1989 OK 166, ¶ 15, 794 P.2d 742, 745.  Oklahoma law, however, allows for the entry of summary judgment when the submissions "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Okla. Stat. tit. 12, § 2056(C).  Here, the state appellate court, in its *de novo* review, found that summary judgment was appropriate—i.e., that there were no disputed material facts.  The lack of a jury trial has no effect on whether Rogne's state-court action failed "otherwise than upon the merits."

### c.   Mootness

Rogne further argues that the state-court case was not resolved on the merits because the state district court adopted the City's arguments that the case was not justiciable and was moot.  (ECF No. 17 at 10–11.)  But it is not the district court's decision that ultimately caused Rogne's case to fail; it was the *de novo* ruling of the appellate court.  In that ruling, the court explicitly found "there was no taking," which goes to the heart of the merits of Rogne's state-court claims.  *See Rogne v. City of Catoosa*, No. 121,026, slip. op.

n.1 (Okla. Civ. App. June 29, 2023).  In any event, whether the state appellate court relied on failure to exhaust administrative remedies or the lack of a taking, its decision was on "the real or substantial grounds of action or defense as distinguished from matters of practice, procedure or form."  *Hug*, 2008 OK CIV APP 93, ¶ 12, 197 P.3d 22 at 24.  The Oklahoma savings statute does not apply here.

### 5.    Rogne's § 1983 Claims Expired in 2021

With no tolling of the statute of limitations or savings statute, the Court returns to the date Rogne's claims accrued: June 21, 2019. Applying Oklahoma's two-year limitations period, Rogne's time to file suit expired in 2021.  As Rogne did not raise his § 1983 claim before that time—either in state or federal court—it is barred.

## II.    Rogne's Declaratory Judgment Action

As an alternative to his takings claim, Rogne asks this Court to enter a declaratory judgment that "the City and the Oklahoma State Courts including Rogers County District Court and the Court of Appeals lacked jurisdiction to regulate and penalize Plaintiff with a Cease and Desist Order and a Citation for $250 fine and threat of a warrant for his arrest."  (ECF No. 2 ¶ 30.)  Rogne argues that, under *Hooper v. City of Tulsa*, 71 F.4th 1270 (10th Cir. 2023), cities like Catoosa lack jurisdiction to issue citations to Indians for municipal violations committed within Indian country.  (ECF No. 17 at 20.)  Without any legal authority, Rogne then argues that this means state civil courts lacked subject-matter jurisdiction to hear the claims <u>he</u> brought when seeking compensation for the effects of

that cease-and-desist order.[33]  (*Id.* at 21.)

The City, conversely, argues that this Court lacks jurisdiction to hear Rogne's claim for declaratory judgment under the *Rooker-Feldman* doctrine and that declaratory judgment is not proper where a plaintiff seeks only retrospective relief.  (ECF No. 9 at 6–9.)

The Court finds it has jurisdiction but dismisses the declaratory judgment action because no prospective relief is sought.

### A.      Subject-Matter Jurisdiction

### 1.      Standard of Review—Rule 12(b)(1)

The City moves to dismiss Rogne's declaratory judgment action for lack of subject-matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  A Rule 12(b)(1) motion typically takes one of two forms.  "The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests."  *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003).  In a facial attack, the Court accepts the allegations in the complaint as true, *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001), and applies the same standards

---

[33] With certain exceptions, the Oklahoma Constitution vests the state district courts with "unlimited original jurisdiction of all justiciable matters . . . ."  Okla. Const. art. 7, § 7(a).  When Rogne filed suit in state court, he asserted the court had jurisdiction and sought an injunction stopping the City from committing acts affecting his use of the property.  *See Rogers Cty. Case*, Am. Pet. ¶¶ 3, 8–9 (Oct. 29, 2014).  He also sought an award for the damages he claimed the City caused to his property and for damages by way of inverse condemnation.  *Id.* ¶¶ 10–11.  Rogne asserted claims for interference with contract, economic relations, and prospective economic relations; trespass; negligence; and negligence per se.  *Id.* ¶ 12.  Rogne does not explain how a state court of general jurisdiction would lack the ability to hear such claims voluntarily brought before it by Rogne.  The only case he cites, *Hooper*, involved the jurisdiction of a city (and its municipal courts) to enforce municipal criminal violations.  *E.g.*, 71 F.4th at 1272.  It did not address the general jurisdiction of state courts to hear civil claims brought by an Indian.

as are applicable to a 12(b)(6) motion, *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).

### 2.    *Rooker-Feldman* Doctrine—Generally

The *Rooker-Feldman*[34] doctrine precludes "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  This type of review is prohibited, because Congress has empowered only the Supreme Court "to exercise authority to reverse or modify a state-court judgment."  *Id.* (internal quotation omitted).

The principle reaches a federal district court's ability to "review state court judgments or claims inextricably intertwined with them."  *Bear v. Patton*, 451 F.3d 639, 641 (10th Cir. 2006).  The Tenth Circuit has recognized, however, that *Rooker-Feldman* has a narrow scope.  *See D.A. Osguthorpe Fam. P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1232 (10th Cir. 2013).  It is reserved for "claims where (1) the plaintiff lost in state court, (2) the state court judgment caused the plaintiff's injuries, (3) the state court rendered judgment before the plaintiff filed the federal claim, and (4) the plaintiff is asking the district court to review and reject the state court judgment."  *Bruce v. City & Cnty. of Denver*, 57 F.4th 738, 746 (10th Cir. 2023).

Notably, the doctrine does <u>not</u> "bar a claim that does not seek to modify or set aside a state court judgment."  *Id.*  "Seeking relief that is *inconsistent* with the state-court

---

[34] *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

judgment is a different matter, which is the province of preclusion doctrine." *Mayotte v. U.S. Bank Nat'l Ass'n*, 880 F.3d 1169, 1174–75 (10th Cir. 2018).

### 3.   Application to Rogne's Complaint

Looking at the request for declaratory judgment in Rogne's complaint, the Court finds *Rooker-Feldman* does not deprive it of jurisdiction.

Rogne appears to seek two different declarations. First, that the City lacked regulatory authority over his property and could not issue the cease-and-desist order or fine him $250. Second, that the state courts lacked subject-matter jurisdiction over his prior lawsuit. (ECF No. 2 ¶¶ 30–31.)

For the first declaration, there is no allegation or other indication that any <u>court</u> anywhere entered an order enforcing the cease-and-desist order or the $250 fine. The only state-court action alleged in the complaint involves Rogne's own civil suit for inverse condemnation and other damages. (*Id.* ¶ 10.) And the only state-court judgment alleged is the grant of summary judgment in favor of the City. (*Id.* ¶ 15.) This is not a situation where Rogne was assessed a $250 fine in a municipal court for code violations and is asking this federal court to overturn or invalidate that order. *Cf. Hooper*, 71 F.4th at 1288.

For the second declaration, Rogne is not asserting an injury arising from the state-court judgment. Instead, Rogne asserts that he was injured by the original unconstitutional taking. (ECF No. 2 ¶ 32.) It is true that the relief Rogne seeks includes a finding that a taking occurred and compensation for that taking—something that would be inconsistent with the state-court judgment. *Cf. Mayotte*, 880 F.3d at 1176 ("To be sure, the relief she seeks includes obtaining title to her home, a result that would be inconsistent with the Rule 120 order approving sale."). But this is a matter of preclusion, which Rogne's briefing makes clear. (ECF No. 17 at 21 ("City's contention of issue or claim

23

preclusion cannot stand as the underlying decisions were invalid.").  The Court has jurisdiction to hear Rogne's claim for declaratory judgment.

### B.    Retrospective Declaratory Relief

Even so, the Court finds dismissal is appropriate, because Rogne seeks retrospective declaratory relief.[35]

### 1.    Declaratory Judgment—Generally

With certain exceptions, in "a case of actual controversy within its jurisdiction," a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  This "gives a means by which rights and obligations may be adjudicated in cases . . . that [have] not reached the stage at which either party may seek a coercive remedy" and in matters where "a party who could sue for coercive relief has not yet done so."  Mary Kay Kane, 10B Federal Practice & Procedure (Wright & Miller) § 2751 (4th ed.).  "Because of the Act's use of the word 'may,' the Supreme Court has held it confers upon courts the power, but not the duty, to hear claims for declaratory judgment." *Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n*, 685 F.3d 977, 980 (10th Cir. 2012) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–87 (1995); *Pub. Affs. Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962) (per curiam)); *see also Wilton*, 512 U.S. at 287 ("We have repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a

---

[35] In its motion to dismiss, the City argues Rogne's requests in Count II "are all retroactive and are inappropriate for declaratory judgment."  (ECF No. 9 at 8–9 ("Plaintiff's complaint contains no allegations regarding the likelihood of future injury or any future conduct on the part of the City").)  Rogne does not respond to this argument.  (ECF No. 17.)

discretion on the courts rather than an absolute right upon the litigant." (internal quotation omitted)).

A district court cannot, however, grant retrospective declaratory judgment un-moored from a claim for damages. *PeTA v. Rasmussen*, 298 F.3d 1198, 1202 & n.2 (10th Cir. 2002). Declaratory judgment is generally a claim for prospective relief, which re-quires a continuing injury. *Id.* "[W]hile a plaintiff who has been constitutionally injured can bring a § 1983 action to recover damages, that same plaintiff cannot maintain a de-claratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future." *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991). Plaintiff's claims are moot where "the entry of a declaratory judgment in [his] favor would amount to nothing more than a declaration that he was wronged, and would have no effect on the defendants' behavior towards him." *Green v. Branson*, 108 F.3d 1296, 1299–1300 (10th Cir. 1997).

### 2. Application to Rogne's Request

Here, Rogne has alleged nothing indicating a good chance of being injured by the City or state courts in the future. *Cf. Hooper*, 71 F.4th at 1277 (finding standing where plaintiff alleged declaratory judgment was necessary to prevent city from continuing to wrongfully exercise jurisdiction over him). He asks for a declaration that the City improperly issued a cease-and-desist order that he agrees was later vacated. (ECF No. 2 ¶¶ 12, 30.) He then asks for a declaration that the state courts lacked jurisdiction to hear his civil claims against the City, while agreeing that litigation was dismissed without

awarding future relief or having any other prospective effect.[36]  (*Id.* ¶¶ 15, 31.)  At this stage of the dispute, a declaratory judgment would amount to nothing more than a declaration that Rogne was wronged, and it would have no effect on the City's behavior toward him.  The Court finds such declaratory relief would be inappropriate and would not redress Rogne's claimed injuries.

### Conclusion

IT IS THEREFORE ORDERED that Defendant City of Catoosa's *Motion to Dismiss* (ECF No. 9) is GRANTED.  Plaintiff John Rogne's claims under 42 U.S.C. § 1983 are DISMISSED WITH PREJUDICE.  Plaintiff's claim for declaratory judgment is DISMISSED WITHOUT PREJUDICE.

ORDERED this 21st day of February, 2025.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[36] To the extent Rogne is concerned with the prospective preclusive effect of issues decided in that civil judgment, this is something Rogne can—and has—argued in pursuing the actual claims that may be affected by such preclusion.  *See* section I(B), *supra*.